RECEIVED IN CLERK'S OFFICE
U S D C  Atlanta

MAY 1 4 2008

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | Case No. 1 08 - CV - 1739 |
| COMMONWEALTH OF KENTUCKY *EX REL*. JACK CONWAY, ATTORNEY GENERAL OF KENTUCKY, Plaintiffs, | ~~PROPOSED~~ *EX PARTE* TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, THE APPOINTMENT OF A RECEIVER, AND OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE |
| v. | |
| DIRECT CONNECTION CONSULTING, INC., a corporation, also d/b/a SureTouch Long Distance; | |
| DIGICOM, LLC, a limited liability company, also d/b/a DigiTouch Long Distance; | |
| ELLIOTT BORENSTEIN, individually and as an owner, officer or manager of Direct Connection Consulting, Inc., and Digicom, LLC; and | |
| JOANN R. (JODY)WINTER, individually and as an owner, officer or manager of Direct Connection Consulting, Inc., and Digicom, LLC, Defendants. | |

Plaintiffs, the Federal Trade Commission and the Commonwealth of Kentucky *ex rel.* Jack Conway, Attorney General of Kentucky, having filed their Complaint for Permanent Injunction and Other Equitable Relief pursuant to Sections13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § § 6101-6108, and having moved for an *ex parte* temporary restraining order and other relief pursuant Rule 65 of the Federal Rules of Civil Procedure, and the Court, having considered the Complaint, declarations, exhibits, and memorandum of law filed in support thereof, and now being advised in the premises, finds that:

1.      This Court has jurisdiction over the subject matter of this case and there is good cause to believe that it will have jurisdiction over the parties.

2.      Venue lies properly with this Court.

3.      There is good cause to believe that Defendants, Direct Connection Consulting, Inc.; Digicom, LLC; Elliott Borenstein; and JoAnn R. (Jody) Winter (collectively "Defendants"), have engaged in and are likely to engage in the future in, acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Telemarketing Sales Rule ("TSR), 16 C.F.R. Part 310, and the Kentucky

Consumer Protection Act, KRS 367.010 *et seq.*, and that the Commission is therefore likely to prevail on the merits of this action.

4.      There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers will occur from the sale, transfer, or other disposition or concealment by Defendants of their assets or corporate records unless Defendants are immediately restrained and enjoined by order of this Court. Thus, there is good cause for an asset freeze, the appointment of a temporary receiver over the corporate Defendants, and for relieving Plaintiffs of the duty to provide Defendants with prior notice of Plaintiffs' motion.

5.      Weighing the equities and considering Plaintiffs' likelihood of success, issuance of an *ex parte* temporary restraining order with asset freeze and other equitable relief is in the public interest.

6.      No security is required of any agency of the United States for issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

## DEFINITIONS

For purposes of this *Ex Parte* Temporary Restraining Order with Asset Freeze, the Appointment of a Receiver, and Other Equitable Relief, and Order to

Show Cause Why a Preliminary Injunction Should Not Issue ("Order"), the following definitions shall apply:

1.      **"Asset"** or **"Assets"** means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes," (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.      **"Defendants"** means Direct Connection Consulting, Inc.; Digicom, LLC; Elliott Borenstein; and JoAnn R. (Jody) Winter, and by whatever other names each may be known.

3.      **"Document"** or **"Documents"** is synonymous in meaning and equal in scope to the documents and electronically stored information identified in Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, stored in any medium from which information can be obtained either directly or, if necessary,

after translation into a reasonably usable form through detection devices. A draft or non-identical copy is a separate document within the meaning of this term.

4. **"Financial institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

5. **"Material"** means likely to affect a person's choice of, or conduct regarding, goods or services.

6. **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

7. **"Plaintiffs"** mean the Federal Trade Commission ("Commission" or "FTC") and the Commonwealth of Kentucky *ex rel.* Jack Conway, Attorney General of Kentucky ("Commonwealth" or "Kentucky").

8. **"Receivership Defendants"** means Direct Connection Consulting, Inc., and Digicom, LLC, and by whatever other names each may be known.

# I. PROHIBITED BUSINESS ACTIVITIES

**IT IS HEREBY ORDERED** that, in connection with the advertising, marketing, promotion, offering for sale, or sale of any good or service, Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations,  subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained and enjoined from:

A.    Misrepresenting, directly or indirectly, expressly or by implication, that:

    (a)    Defendants are contacting consumers from, or on behalf of, or are otherwise affiliated with a major retailer or a consumer's credit card company;

    (b)    Defendants will provide consumers with free goods or services or assistance with unwanted credit card charges; or

    (c)    Consumers' credit card accounts will not be charged or their bank accounts will not be debited;

B.    Charging consumers' credit cards or debiting consumers' bank accounts without their authorization;

C.    Violating, or assisting others in violating, any provision of the TSR, including, but not limited to:

    1.    Section 310.3(a)(2)(i) of the TSR, 16 C.F.R. § 310.3(a)(2)(i), by misrepresenting, directly or by implication, the total costs to purchase, receive or use, any goods or services that are the subject of their sales offer;

    2.    Section 310.3(a)(2)(vii) of the TSR, 16 C.F.R. § 310.3(a)(2)(vii), by misrepresenting, directly or by implication, that they are calling from, on behalf of, or are otherwise affiliated with a major retailer or a consumer's credit card company;

    3.    Section 310.4(d) of the TSR, 16 C.F.R. § 310.4(d), by failing to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call:

        (a)    the identity of the seller;

        (b)    that the purpose of the call is to sell goods or services; and

        (c)    the nature of the goods or services;

4. Section 310.3(a)(1)(vii) of the TSR, 16 C.F.R. §310.3(a)(1)(vii), by failing to disclose truthfully, in a clear and conspicuous manner, before a consumer pays for the goods and services offered, all material terms and conditions of their negative option feature, including, but not limited to:

    (a) that the consumer's account will be charged unless the consumer takes an affirmative action to avoid the charge;

    (b) the date(s) the charge(s) will be submitted for payment; and

    (c) the specific steps the consumer must take to avoid the charge(s);

5. Section 310.4(a)(6) of the TSR, 16 C.F.R. § 310.4(a)(6), by causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the consumer; and

6. Section 310.4(b)(1)(iii)(A) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A), by engaging in, or causing others to engage in, initiating outbound telemarketing calls to persons who had previously stated that they do not wish to receive calls made by or on behalf of Defendants;

D.  Violating, or assisting others in violating, the Kentucky Consumer Protection Act, KRS 367.010 *et. seq.*, as follows:

1.  KRS 367.170, by engaging in unfair, false, misleading, or deceptive acts or practices in the conduct of trade or commerce;

2.  KRS 367.46957, by failing to provide Kentucky consumers with a Notice of Cancellation Rights required by KRS 367.46963;

3.  KRS 367.46955(5), by causing Kentucky consumers' credit card accounts to be charged without having obtained consumers' express written authorization or provided consumers the notice required in KRS 367.46961;

4.  KRS 367.46955 (10), by directing or permitting employees to use a fictitious name or not to use their name while making a telephone solicitation to Kentucky consumers;

5.  KRS 367.46955 (19), by engaging in any unfair, false, misleading, or deceptive practice or act as part of a telephone solicitation; and

6.  KRS 367.46953 by:

    (a)  allowing their employees to use fictitious names;

(b)     failing to identify the product being offered within the first 30 seconds of the call; and

(c)     failing to inquire whether the consumers were interested in receiving a sales call within the first 30 seconds of the call.

## II. MAINTAIN RECORDS AND REPORT NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained and enjoined from:

A.     Failing to create and maintain books, records, accounts, bank statements, accountants' reports, general ledgers, general journals, cash receipt ledgers, cash disbursement ledgers and source documents, documents indicating title to real or personal property, and any other data which, in reasonable detail, accurately, fairly, and completely reflect the incomes, disbursements, transactions, dispositions, and uses of the Defendants' Assets;

B. Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents, including electronically stored information, that relate in any way to the business practices or business or personal finances of Defendants; to the business practices or finances of entities directly or indirectly under the control of Defendants; or to the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

C. Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiffs with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

### III. ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, members,

partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained and enjoined from:

      A.     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property or other Assets, or any interest therein, wherever located, including any Assets outside the territorial United States, that are: (1) owned, controlled or held by, or for the benefit of, in whole or in part, any Defendant; (2) in the actual or constructive possession of any Defendant, including, but not limited to, any Assets held for or by any Defendant in any account at any bank or savings and loan institution, or any credit card processing agent or agent providing electronic funds transfer services or automated clearing house processing, bank debit processing agent, network transaction processor, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian,

money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind, either within or outside the United States; (3) held by an agent of any Defendant as a retainer for the agent's provision of services to any Defendant; or (4) owned, controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership or other entity directly or indirectly owned, managed, or controlled by any Defendant including, but not limited to, SureTouch, L.L.C., Choice Advantage, LLC, Choice Programs, LLC, Atlanta Aviation, LLC, Gilbor Aviation, LLC, and Ebor Management, Inc.;

B.      Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of, or for the use or benefit of, any Defendant, or subject to access by any Defendant, or under the control of any Defendant;

C.      Incurring charges or cash advances on any credit card, debit card, or lines of credit issued in the name, individually or jointly, of any Defendant;

D.      Obtaining a personal or secured loan; and

E. Incurring liens or other encumbrances on real property, personal property, or other Asset titled in the name, individually or jointly, of any Defendant.

The Assets affected by this Section shall include both existing Assets and Assets acquired after the effective date of this Order.

## IV. PROHIBITION ON DISCLOSING CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained and enjoined from:

A. Selling, renting, leasing, transferring, or otherwise disclosing the name, address, birth date, telephone number, email address, Social Security number, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in the Complaint;

B.     Benefitting from or using the name, address, birth date, telephone number, email address, Social Security number, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in the Complaint.

*Provided however*, that Defendants may disclose such financial or identifying personal information to a law enforcement agency or as required by any law, regulation, or court order.

## V. DUTIES OF THIRD PARTY ASSET HOLDERS

**IT IS FURTHER ORDERED** that each person, financial institution, or other entity maintaining or having custody or control of any Asset of any Defendant, or that at any time since January 1, 2006, has maintained or had custody of any such Asset, and which is provided with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

A.     Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, sale, liquidation, or other disposal of any of the Assets or other property held by, under its control, or on behalf of any Defendant in any account

maintained in the name of, or for the benefit or use of, any Defendant, in whole or in part, except as directed by further order of this Court, or by written agreement of Plaintiffs;

B.      Deny Defendants access to any safe deposit boxes, commercial mail boxes or storage facilities that are titled in the name, individually or jointly, of any Defendant, or otherwise subject to access by any Defendant;

C.      Provide to counsel for the Plaintiffs, within five (5) business days of notice of this Order, a sworn statement setting forth:

> 1.      The identification of each account or Asset titled in the name, individually or jointly, of any Defendant, or to which any Defendant is a signatory, or which is held on behalf of, or for the benefit or use of, any Defendant or subject to any Defendant's control, including all trust accounts on behalf of any Defendant or subject to any Defendant's control;
>
> 2.      The balance of each such account, or a description and appraisal of the value of such Asset, as of the close of business on the day on which notice of this Order is received, and, if the account or Asset has been closed or removed, or more than $1,000

withdrawn or transferred from it within the last ninety (90) days, the date of the closure or removal of funds, the total funds removed or transferred, and the name and account number of the person or entity to whom such account, funds, or other Asset was remitted; and

3.   The identification and location of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access or control by any Defendant;

D.   Within five (5) days of a request by Plaintiffs, provide Plaintiffs with copies of any records or other Documents pertaining to each such account or Asset, including, but not limited to, originals or copies of account applications, corporate resolutions, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs;

E.   Plaintiffs may properly serve this Order on any financial or brokerage institution, business entity or person that holds, controls or maintains custody of any account or Asset of any Defendant or has held, controlled or maintained

custody of any account or Asset of any Defendant at any time since January 1, 2006, by facsimile transmission, hand delivery, or overnight carrier. The Assets affected by this Section shall include both existing Assets and Assets acquired after the effective date of this Order.

## VI. FINANCIAL STATEMENTS AND INFORMATION

**IT IS FURTHER ORDERED** that each Defendant shall serve upon counsel for Plaintiffs, within five (5) days of service of this Order:

A.     A completed financial statement, accurate as of the date of entry of this Order, for each individual Defendant in the form provided as Attachment A, "Financial Statement of Individual Defendant," and for each corporate Defendant, in the form provided as Attachment B, "Financial Statement of Corporate Defendant." The financial statements shall include all Assets held outside the territory of the United States, shall be accurate as of the date of entry of this Order, and shall be verified under oath. Defendants shall attach to these completed financial statements copies of all local, state, provincial, and federal income and property tax returns, along with other attachments and schedules as called for by the instructions to the financial statements; and

17

B.     The name, address and telephone number of each accountant, financial planner, investment advisor, stock broker or other individual, corporation, or partnership whom they have used for financial, business or tax advice or services, since January 1, 2006.

## VII. APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that _PAT HUDDLESTON, II_ is appointed as a temporary receiver ("Receiver") for Defendants Direct Connection Consulting, Inc. and Digicom, LLC, and any of their affiliates, subsidiaries, divisions, or telephone sales operations, wherever located ("Receivership Defendants"), with the full power of an equity receiver. The Receiver is directed and authorized to accomplish the following:

A.     Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of the Receivership Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants. The Receiver shall, however, not interfere with or be privy to the defense of this action;

B.     Take custody, control, and possession of all Assets and Documents of,

or in the possession, custody or under the control of, the Receivership Defendants wherever situated and including, but not limited to, the business premises of the Receivership Defendants. The Receiver shall have full power to divert mail and to sue for, collect, receive, take possession, hold and manage all Assets and Documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants. *Provided, however*, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter, without prior Court approval;

C.    Use any means necessary to take possession of and to secure each and all business premises of the Receivership Defendants. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all receivership Assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, Social Security number, job description, passwords or access codes, method of compensation, and all accrued and unpaid commissions and

compensation of each such employee or agent; (4) photographing and video taping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems, servers, network access, or other means of access to the computer or other records maintained at that location; and (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Defendants. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security;

D.     Conserve, hold, and manage all Assets of the Receivership Defendants and perform all acts necessary or advisable to preserve the value of those Assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing unauthorized transfer, withdrawal, or misapplication of Assets, and including the authority to liquidate or close out any open securities or commodities futures positions of the Receivership Defendants;

E.     Enter into contracts and purchase insurance as advisable or necessary;

F.     Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

G.     Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary;

H.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

I.     Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws;

J.     Institute, compromise, adjust, appear in, intervene in, or become party

to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

K.   Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve the Assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

L.   Continue to conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably and lawfully, if at all; provided that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the business can be lawfully operated at a profit using the Assets of the receivership estate;

M.   Issue subpoenae to obtain Documents and records pertaining to the

receivership, and conduct discovery in this action on behalf of the receivership estate;

N.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account. The Receiver shall serve copies of monthly account statements on all parties;

O.     Maintain accurate records of all receipts and expenditures made as Receiver;

P.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency, including Plaintiffs; and

Q.     File reports with the Court on a timely basis.

## VIII. COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that

A.     Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by

personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, and all other persons or entities served with a copy of this Order, shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but not be limited to:

1. Providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; and

2. Providing any password required to access any computer, electronic file, or telephonic data in any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver.

B. Defendants and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, and all other

persons or entities served with a copy of this Order, are hereby restrained and
enjoined from directly or indirectly:

1. Transacting any of the business of the Receivership Defendants;

2. Destroying, secreting, defacing, mutilating, concealing, altering, transferring, or otherwise disposing of any Document of the Receivership Defendants, including but not limited to books, records, tapes, discs, accounting data, checks (fronts and backs), correspondence, forms, advertisements, website designs and texts, telemarketing scripts or outlines, brochures, manuals, banking records, customer lists, customer files, customer payment histories, invoices, telephone records, ledgers, payroll records, or other Documents of any kind, including electronically stored information;

3. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Asset owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, any Receivership Defendant, or the Receiver;

4.    Excusing debts owed to the Receivership Defendants;

5.    Failing to notify the Receiver of any Asset, including accounts, of the Receivership Defendants held in any name other than the name of the Receivership Defendants, or by any person or entity other than the Receivership Defendants, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Assets;

6.    Doing any act or refraining from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the Assets or Documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court; or

7. Filing, or causing to be filed, any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.,* without prior permission from this Court.

## IX. COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is entitled to reasonable compensation for the performance of all duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred, solely from the Assets now held by, or in the possession or control of, or which may be received by the Receivership Defendants. The Receiver shall file with the Court, and serve on the parties, periodic requests for the payment of such compensation, with the first such request due prior to sixty days after the date of this Order. The Receiver shall not increase the Receiver's fee billed to the receivership estate without prior approval of the Court.

## X. BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $ 5,000.00 with sureties to be approved by the

27

Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts as the Court directs.

## XI. IMMEDIATE ACCESS TO BUSINESS OFFICES AND RECORDS

**IT IS FURTHER ORDERED** that the Receiver, Plaintiffs, and their representatives, agents, and assistants shall have immediate access to all business locations where the Receivership Defendant's business-related property, records, and equipment are located including, but not limited, to: 11660 Alpharetta Highway, Suite 650, Roswell, Georgia 30076. The Receiver and his representatives, agents, and assistants, shall also have the right to remove Documents from any other business locations connected with the Receivership Defendants' business in order that they may be inspected, inventoried, and copied.

## XII. DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that, immediately upon service of this Order upon them, or within such time as may be permitted by the Receiver, Defendants, or any other person or entity served with a copy of this Order, shall transfer or deliver possession, custody and control of the following to the Receiver:

A.     All Assets of the Receivership Defendants (including, but not limited to, desktop and laptop computers and network servers);

B. All Documents of the Receivership Defendants, including, but not limited to, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), customer lists, title documents, contracts, accounting data, written or electronic correspondence, advertisements, computer tapes, disks, or other computerized records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, membership records and lists, refund records, receipts, ledgers, personal and business canceled checks and check registers, appointment books, copies of federal, state, or local business, personal income, or property tax returns, and other Documents or records of any kind that relate to the Receivership Defendants' business practices;

C. All funds and other Assets belonging to members of the public now held by the Receivership Defendants; and

D. All keys, codes, and passwords, entry codes, combinations to locks, and information or devices required to open or gain access to any Asset or Document, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property.

### XIII. NON-COMPLIANCE WITH TRANSFERS OR DELIVERY

**IT IS FURTHER ORDERED** that, in the event any person or entity fails to transfer or deliver any Asset or otherwise fails to comply with any provision of this Order requiring the delivery of Assets, Documents or other things, the Receiver may file *ex parte* an affidavit of non-compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, writs of possession or sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the Asset, Document, or other thing and to deliver it to the Receiver.

### XIV. REPATRIATION OF FOREIGN ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that, within five (5) business days following service of this Order, Defendants shall:

A.    Repatriate to the United States all funds, Documents or Assets in foreign countries held either: (1) by any Defendant; (2) for the benefit of any Defendant; or (3) under the direct or indirect control, jointly or individually, of any Defendant;

B.     The same business day as any repatriation, (1) notify counsel for the Plaintiffs and the Receiver of the name and location of the financial institution or other entity that is the recipient of such funds, Documents or Assets; and (2) serve this Order on any such financial institution or other entity;

C.     Provide the Plaintiffs and the Receiver with a full accounting of all funds, Documents, and Assets outside of the territory of the United States held either: (1) by the Defendants; (2) for the Defendants's benefit; or (3) under the Defendants' direct or indirect control, individually or jointly;

D.     Provide Plaintiffs with access to all records of accounts or assets of Defendants held by financial institutions whether located outside the territorial United States or otherwise by signing the Consent to Release of Financial Records attached to this Order as Attachment C.

## XV.  INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by the preceding Section of this Order, including, but not limited to:

A.     Sending any statement, letter, fax, e-mail or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time as all Assets have been fully repatriated pursuant to the preceding Section of this Order; and

B.     Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time as all Assets have been fully repatriated pursuant to the preceding Section of this Order.

## XVI. DEFENDANTS' ACCESS TO THEIR BUSINESS PREMISES

**IT IS FURTHER ORDERED** that the Receiver shall allow the Defendants' representatives, and the Defendants themselves, reasonable access to the premises of the Receivership Defendants. The purpose of this access shall be to inspect and copy any and all books, records, accounts, and other property owned by or in the possession of the Receivership Defendants. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XVII. CREDIT REPORTS

**IT IS FURTHER ORDERED** that the Plaintiffs may obtain credit reports concerning Defendants Elliott Borenstein and JoAnn Rachel (Jody) Winter pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such report is requested shall provide it to the Plaintiffs.

## XVIII. DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, agent, partner, division, sales entity, successor, assignee, officer, director, employee, independent contractor, spouse, Internet web host or master, agent, attorney, and/or representative of Defendants and shall, within ten (10) days from the date of entry of this Order, serve upon counsel for the Plaintiffs a sworn statement that the Defendants have complied with this provision of this Order, which statement shall include the names and addresses of each such person or entity who has received a copy of the Order.

# XIX. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that;

Except by leave of this Court, during the pendency of the receivership

ordered herein, the Defendants and *all* other *until* persons and entities are hereby stayed

from taking any action to establish or enforce any claim, right or interest for,

against, on behalf of, in, or in the name of, the Receivership Defendants, or any of

their subsidiaries, affiliates, partnerships, Assets, Documents, or the Receiver or

the Receiver's duly authorized agents acting in their capacities as such, including,

but not limited to, the following actions:

A.      Commencing, prosecuting, continuing or enforcing any suit or

proceeding, except that such actions may be filed to toll any applicable statute of

limitations;

B.      Accelerating the due date of any obligation or claimed obligation,

filing, perfecting, or enforcing any lien; taking or attempting to take possession,

custody or control of any Asset; attempting to foreclose, forfeit, alter, or terminate

any interest in any Asset, whether such acts are part of a judicial proceeding, are

acts of self-help, or otherwise, or setoff of any debt owing to the Receivership

Defendants that arose before the date of this Order against any claim against the Receivership Defendants;

C.     Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession or management of the Assets or Documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets and Documents of the Receivership Defendants.

*Provided, however*, nothing in this Paragraph shall prohibit any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the Receivership Defendants.

*Provided further*, that, except as otherwise provided in this Order, all persons and entities in need of documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Receiver, any such person or entity may thereafter seek an order of this Court with regard to the relief requested.

## XX. ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED**, pursuant to Federal Rule of Civil Procedure 65(b), that each Defendant shall appear before this Court on the _28th_ day of _May_, 2008, at _10_ o'clock _a_.m., at the United States Courthouse, United States District Court for the Northern District of Georgia, Atlanta, Georgia, Courtroom _1708_, to show cause, if there is any, why this Court should not enter a preliminary injunction, pending final ruling on the Complaint against Defendants, enjoining them from further violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Telemarketing Sales Rule, 16 C.F.R. Part 310, and the Kentucky Consumer Protection Act, KRS 367.010 *et seq.*, continuing the freeze of their Assets, making the Receiver's appointment permanent, and imposing such additional relief as may be appropriate. Defendants shall serve answering pleadings or materials on Counsel for the Plaintiffs not less than _four_ business days prior to the hearing on Plaintiffs' request for a preliminary injunction. Plaintiffs may submit reply pleadings or materials not less than _two_ days prior to the hearing.

## XXI.  SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be distributed by U.S. first class mail, overnight delivery, facsimile, electronic mail, or personally by agent or employees of Plaintiffs, by agents or employees of the Receiver, by any law enforcement agency, or by private process server, upon any person, financial institution, or other entity that may have possession or control of any property, property right, Asset or Document of any Defendant, or that may be subject to any provision of this Order.  Service upon any branch or office of any financial institution or entity shall effect service upon the entire financial institution or entity.

## XXII.  CORRESPONDENCE WITH AND NOTICE TO PLAINTIFFS

**IT IS FURTHER ORDERED** that, for purposes of this Order, all correspondence and pleadings to the Commission shall be addressed to:

> Valerie M. Verduce, Esq.
> Federal Trade Commission
> 225 Peachtree Street, Suite 1500
> Atlanta, Georgia 30303
> (404) 656-1361 (telephone)
> (404) 656-1379 (facsimile)

Notice may be provided by email to vverduce@ftc.gov.  All correspondence and pleadings to the Commonwealth of Kentucky shall be addressed to:

Todd E. Leatherman
Assistant Attorney General
Kentucky Office of Attorney General
1024 Capital Center Drive
Frankfort, KY 40601
Telephone: (502) 696-5389

Notice may be provided by email to todd.leatherman@ag.ky.gov.

## XXIII. DURATION OF TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted

herein shall expire at _11 : 00 a_ .m., on _____ _May 28_ _____, 2008,

unless, for good cause shown, this Order is extended or unless the Defendants consent

that it should be extended for a longer period of time.

## XXIV. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction over

this matter for all purposes.

**IT IS SO ORDERED,** this _14th_ day of _____ _May_ _____, 2008, at

_11:19 a_ .m.

_____
United States District Judge

38